Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| SHOOTING ACCESSORIES & SERVICES VIRGINIA CARDONA VALENTIN ARMERÍA<br><br>Recurrente<br><br>v.<br><br>NEGOCIADOS DE LA POLICÍA DE PUERTO RICO<br><br>Recurridos | KLRA202400122 | Revisión Judicial procedente del Departamento De Seguridad Pública Negociado de la Policía de Puerto Rico<br><br>SAIC-NILIAF-DILAIAP-4-0001<br><br>Sobre:<br>Revocación de Licencia de Armero 187511 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de abril de 2024.

## I.

El 7 de marzo de 2024, Shooting Accessories Services (SAS), por virtud de su presidenta, la señora Virginia Cardona Valentín (señora Cardona Valentín), presentó un recurso de revisión administrativa procedente del Negociado de la Policía de Puerto Rico (Negociado de la Policía). Mediante este, SAS nos solicitó revisar la notificación SAIC-NILIAF-DILAIAP-4-0001, emitida el 10 de enero de 2024 por el Negociado de Investigaciones de Licencias e Inspección de Armas de Fuego del Negociado de la Policía (Negociado de Investigaciones), en el que se revocó la licencia de armero número 187511, expedida a su favor.[1]

---
[1] Apéndice del *Recurso de Revisión*, Anejo 11, págs. 168-171.

El 8 de marzo de 2024, emitimos una *Resolución* en la que le concedimos al Negociado de la Policía hasta el 8 de abril de 2024 para presentar su alegato en oposición al recurso.

El 8 de abril de 2024, el Negociado de la Policía, por conducto de la Oficina del Procurador General de Puerto Rico, presentó una *Solicitud de breve término*, en la que nos solicitó un término adicional de dos (2) días para presentar su alegato.

El 9 de abril de 2024 emitimos una *Resolución* en la que declaramos Ha Lugar la solicitud de prórroga del Negociado de la Policía.

Así las cosas, el 10 de abril de 2024, el Negociado de la Policía presentó su alegato, en el que nos peticionó confirmar su determinación sobre la revocación de la licencia de armero a SAS o, en la alternativa, devolver el caso a la agencia para que se celebre una vista administrativa únicamente sobre el arma que se ocupó el 15 de septiembre de 2022, cuya *Certificación de recibo de armas y/o municiones* se le entregó a la señora Cardona Valentín en igual fecha.

Con el beneficio de la comparecencia de las partes, pormenorizaremos los hechos procesales atinentes a este recurso.

**II.**

El caso de marras tuvo su génesis el 7 de septiembre de 2022, cuando el Negociado de Investigaciones emitió la notificación SAIC-NILIAF-1-0716. Mediante esta, informó que, tras varias inspecciones realizadas por la División de Investigaciones de Licencias de Armas de Fuego e Inspección de Armerías y Polígonos, SAS incumplió por más de dos (2) ocasiones con las medidas de seguridad.[2] El Negociado de Investigaciones determinó que SAS infringió varios artículos de la Ley Núm. 168-2019, conocida como la *Ley de Armas de Puerto Rico de 2020*, 25 LPRA sec. 464 *et seq.* (Ley de Armas) y del *Reglamento*

---

[2] *Íd.*, Anejo 1, págs. 1-4.

*para Administrar la Ley de Armas de Puerto Rico de 2020*, Reglamento Núm. 9172 (Reglamento de la Ley de Armas). En particular, notificó que SAS contravino el Artículo 4.01 (e)(4) de la Ley de Armas, *supra*, sec. 464, referente al sistema de alarma contra robo y escalamiento conectado al Negociado de la Policía. Además, el Artículo 4.03 (f) de la Ley de Armas, *supra*, sec. 464b, sobre mantener disponible los documentos y libros durante las horas laborables para su inspección por cualquier funcionario del Ministerio Público o agente del orden público en casos de investigación criminal. Asimismo, el Artículo 4.04 (a)(b)(c) de la Ley de Armas, *supra*, sec. 464c y los Artículos 4.09 y 4.10 del Reglamento de la Ley de Armas, *supra*, en torno al cumplimiento con las medidas de seguridad para el almacenamiento o custodia de las armas de fuego y municiones. Por ello, el Negociado de Investigaciones le revocó inmediatamente la licencia de armero número 187511 a SAS y le canceló el acceso al *Sistema de Registro Electrónico de Armas y Licencias.* En la notificación, se le apercibió a SAS lo siguiente:

> Puede usted solicitar en el Negociado de Investigaciones de Licencias e Inspección de Armas de Fuego, una reconsideración dentro de los próximos quince (15) días naturales siguientes a la revocación de la licencia de armero. El Negociado de Investigaciones de Licencias e Inspección de Armas de Fuego, tendrá quince (15) días naturales para emitir una determinación y atender la misma. De sostenerse la denegatoria o revocación, o de no emitir ninguna determinación respecto a la reconsideración, el peticionario de la licencia de armero podrá acudir al Tribunal de Primera Instancia para la revisión de la decisión administrativa.
>
> Si el Negociado de Investigaciones de Licencias e Inspección de Armas de Fuego, no emite una determinación dentro del término previamente establecido, el solicitante tendrá derecho a acudir al Tribunal Municipal mediante una petición para que se dilucide la controversia, la cual se tendrá que resolver en el término de quince (15) días naturales.

Como corolario de lo anterior, en igual fecha, el agente Rafael Colón Sánchez del Negociado de la Policía ocupó las armas custodiadas por SAS.

El 14 de septiembre de 2022, la señora Cardona Valentín recibió un *Inventario de la propiedad ocupada*,[3] emitido el 7 de septiembre de 2022 por el Negociado de la Policía y los documentos titulados *Certificación de recibo de armas y/o municiones*.[4] En cada certificación, fechada 7 de septiembre de 2022, el Negociado de la Policía consignó que el motivo para ocupar las armas fue: "REVOCADA", en referencia a la licencia de armero. Además, apercibió a SAS que, de estar inconforme con la ocupación, podía solicitar una vista administrativa ante un Oficial Examinador dentro del término de quince (15) días, contados a partir de la fecha de notificación del comunicado. A su vez, le notificó a SAS que de no solicitarse la vista, se entendería que renunció a su celebración y al derecho a estar presente y mostrar evidencia a su favor.

El día de la ocupación de las armas no se encontró un revólver. El 15 de septiembre de 2022, la señora Cardona Valentín se comunicó con la agente Lourdes Arroyo Vargas para informarle que encontró un arma faltante a los ocupados, el revólver *Colt* calibre 38.[5] En igual fecha, el agente Héctor Martínez Bracety ocupó el arma y emitió la *Certificación de recibo de armas y/o municiones*.[6] En esta certificación, también se consignó que el motivo para ocupar el arma fue que la licencia de armero fue revocada. Además, se le apercibió a SAS que de estar inconforme con la ocupación, podía solicitar una vista administrativa ante un Oficial Examinador del Negociado de la Policía dentro del término de quince (15) días, contados a partir de la fecha de notificación.

Posteriormente, el **23 de septiembre de 2022**, la señora Cardona Valentín envió una carta por correo certificado al Negociado

---

[3] *Íd.*, Anejo 2, pág. 5.
[4] *Íd.*, Anejo 3, págs. 6-145.
[5] *Íd.*, Anejo 4, págs. 146-148.
[6] *Íd.*, Anejo 5, págs. 149-150.

de Investigaciones.[7] En esta, solicitó la celebración de una vista administrativa referente a la revocación de licencia de armero de SAS.

Ante la falta de respuesta, el 28 de septiembre de 2022, la señora Cardona Valentín envió un correo electrónico al agente Sánchez, en el que le solicitó que le ayudara con la persona encargada de restablecer la licencia de armero y el acceso al *Sistema de Registro Electrónico de Armas y Licencias*.[8]

El 20 de diciembre de 2022, la señora Cardona Valentín envió por correo certificado un escrito titulado *Reconsideración y/o solicitud suplementaria de vista administrativa* al Negociado de Investigaciones, en el que peticionó reconsiderar la revocación de la licencia de armero y devolver todas las armas y municiones ocupadas.[9] A su vez, solicitó nuevamente que, ante la falta de respuesta de la agencia, se le concediera una vista administrativa. La señora Cardona Valentín sostuvo que la notificación SAIC-NILIAF-1-0716 del 7 de septiembre de 2022 era defectuosa, debido a que el término de quince (15) días para solicitar reconsideración era contrario a Derecho. Esto, puesto que entendía que la revocación de una licencia es una determinación final que podía revisarse dentro del término de veinte (20) días desde el archivo en autos de la notificación, a tenor con el Artículo 7.05 de la Ley de Armas, *supra*, sec. 467d, y el Artículo 6.10 del Reglamento de la Ley de Armas, *supra*. Además, que contrario al apercibimiento de recurrir en revisión judicial al Tribunal Municipal o Superior, debía referirse al Tribunal de Apelaciones, conforme con la Sección 4.2 de Ley Núm. 38-2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9672 (LPAUG). En virtud de ello, la señora Cardona Valentín estableció que las acciones

---

[7] *Íd.*, Anejo 6, págs. 151-153.
[8] *Íd.*, Anejo 7, pág. 154.
[9] *Íd.*, Anejo 8, págs. 155-162.

tomadas por la agencia fueron *ultra vires* y en violación a su debido proceso de ley.

El 3 de mayo de 2023, la señora Cardona Valentín entregó personalmente una *Moción urgente en relación a otro escrito y en solicitud de determinación conforme a derecho* a la señora Elsa M. Rodríguez, quien era la persona autorizada en el Negociado de la Policía para recibir el documento.[10] Mediante esta, precisó que transcurrieron más de noventa (90) días de la solicitud de una vista administrativa sin que el Negociado de la Policía se exprese.

Ante la inacción del Negociado de la Policía, el 3 de noviembre de 2023, la señora Cardona Valentín presentó una demanda de *mandamus* ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI) contra el Estado Libre Asociado de Puerto Rico (ELA), el Negociado de la Policía y el señor Antonio López Figueroa en su capacidad oficial como Comisionado de la Policía.[11] Mediante esta, la señora Cardona Valentín solicitó dejar sin efecto la notificación de revocación de licencia de armero o, en la alternativa, que se le ordene al Negociado de la Policía resolver las mociones y los escritos que presentó.

El 10 de enero de 2024, el Negociado de Investigaciones emitió una segunda notificación de revocación de licencia de armero.[12] En esta, se enmendó el término para SAS presentar una moción en reconsideración de la determinación de la agencia, siendo veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden. Se le informó que la agencia ostenta quince (15) días para considerar la solicitud. Además, que el término para solicitar revisión comenzará a decursar nuevamente desde la fecha de la notificación de la denegatoria de plano de la reconsideración o

---

[10] *Íd.*, Anejo 9, págs. 163-165.
[11] Tomamos conocimiento judicial del caso AG2023CV01814 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Entrada Núm. 1.
[12] Apéndice de *Revisión Administrativa*, Anejo 11, págs. 168-171.

desde que expiró el término de quince (15) días sin la agencia actuar. Asimismo, el Negociado de Investigaciones advirtió que la parte adversamente afectada por una orden o resolución final de la agencia y que haya agotado todos los remedios administrativos, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final.

Tras varios trámites procesales, el 11 de enero de 2024, el TPI celebró una vista de *mandamus*.[13] De la *Minuta* se desprende que la representación legal del ELA aceptó que la notificación del Negociado de la Policía del 7 de septiembre de 2022 era inoficiosa y que el proceso allí consignado estaba equivocado, dado que disponía que el procedimiento debía efectuarse de conformidad con la LPAUG, *supra*, mientras se le otorgó a SAS un término distinto. El ELA indicó que los asuntos de investigación, ocupación o revocación de licencia, entre otros en la Ley de Armas, *supra*, deben atenderse a la luz del procedimiento establecido en LPAUG, *supra*. Señaló que le recomendó al Negociado de la Policía corregir la determinación a tenor con el procedimiento establecido por ley para la denegación de licencias, por lo que, el día anterior a la vista, la agencia corrigió y notificó el documento a SAS. Por ello, el ELA estableció la controversia se tornó académica para el TPI, debido a que yacía en su cauce administrativo. El representante legal de la señora Cardona Valentín manifestó estar conforme con la posición del ELA. Acto seguido, el TPI declaró Ha Lugar el desistimiento voluntario, en virtud de lo informado por las partes y tras asegurarse que la señora Cardona Valentín entendió sus consecuencias.

El 23 de enero de 2024, la señora Cardona Valentín envió por correo certificado una moción de reconsideración al Negociado de

---

[13] Véase *Íd.*, Anejo 10, págs. 166-167.

Investigaciones, solicitando reconsiderar y dejar sin efecto la revocación de la licencia de armero expedida a favor de SAS. Esgrimió que la acción tomada por el Negociado de Investigaciones, notificada conforme a derecho después de un año y cuatro meses, mantuvo inoperante la armería, con un efecto confiscatorio y un daño patrimonial a su capacidad productiva.

Oportunamente, ante el silencio de la agencia e inconforme con la revocación de la licencia de armero, el 7 de marzo de 2024, SAS compareció ante nos por virtud de un recurso de revisión judicial de la decisión administrativa en el que planteó que el Negociado de Investigaciones cometió los siguientes errores:

> 1. ERRÓ EL NEGOCIADO DE INVESTIGACIONES DE LICENCIAS E INSPECCIÓN DE ARMAS DE FUEGO AL NO CONCEDER LA VISTA ADMINISTRATIVA SOLICITADA POR LA RECURRENTE EN VIOLACIÓN DE SU REGLAMENTACIÓN Y DEL DEBIDO PROCESO DE LEY.
>
> 2. ERRÓ EL NEGOCIADO DE INVESTIGACIONES DE LICENCIAS E INSPECCIÓN DE ARMAS DE FUEGO AL NEGARSE A CONSIDERAR LA RECONSIDERACIÓN PRESENTADA POR LA RECURRENTE.
>
> 3. ERRÓ EL NEGOCIADO DE INVESTIGACIONES DE LICENCIAS E INSPECCIÓN DE ARMAS DE FUEGO, AL SOSTENER UNA ACCIÓN CONTRA LA RECURRENTE, BAS[Á]NDOSE EN UNA NOTIFICACIÓN INSUFICIENTE EN DERECHO CONFORME A LA LPAUG.

En esencia, SAS adujo que la inacción del Negociado de Investigaciones tuvo como efecto negarle el derecho a una vista administrativa, lo que, a su entender, constituyó una crasa violación a su debido proceso de ley. A su vez, SAS aseveró que la señora Cardona Valentín subsanó el señalamiento que provocó la intervención de la agencia. Por otro lado, sostuvo que en la notificación SAIC-NILIAF-1-0716 no surgen los hechos particulares por los que la armería violentó la Ley de Armas, *supra*, y su Reglamento, *supra*. SAS esgrimió que la carencia de determinaciones de hechos en la referida notificación, la cual constituyó una determinación final de la agencia, contravino la Sección 3.14 de LPAUG, *supra*, sec. 9654 e imposibilitó que los foros apelativos

ejerzan su función revisora. Al efecto, esgrimió que la acción del Negociado de Investigaciones fue *ultra vires*. Por ello, nos solicitó revocar la notificación SAIC-NILIAF-DILAIAP-4-0001 del 10 de enero de 2024 y en su consecuencia, devolverle la licencia de armero y la propiedad incautada.

El 10 de abril de 2024, la parte recurrida radicó su alegato en oposición. En el mismo, el Negociado de la Policía indicó que la notificación sobre la revocación de la licencia de armero, **emitida el 10 de enero de 2024** por el Negociado de Investigaciones, cumple con las disposiciones de la Ley de Armas, *supra*, su Reglamento, *supra*, y la LPAUG, *supra*. Por ello, adujo que no se le violentó el debido proceso de ley de SAS. Por otro lado, el Negociado de la Policía aseveró que SAS solicitó la vista administrativa fuera del término especificado en cada uno de los sesenta y ocho (68) documentos titulados *Certificación de recibo de armas y/o municiones*, **fechado 7 de septiembre de 2022**. Esto, debido a que sostuvo que el término venció el 22 de septiembre de 2022, mientras se depositó el correo en el día posterior, a saber, el 23 de septiembre de 2022. No obstante, el Negociado de la Policía reconoció que, toda vez que el 15 de septiembre de 2022 se emitió la *Certificación de recibo de armas y/o municiones* del arma ocupado en igual fecha, de esta Curia entender que SAS solicitó la vista administrativa dentro del término, el caso debería devolverse a la agencia para que se celebre la vista administrativa únicamente sobre dicha arma.

Examinados los planteamientos esbozados por las partes, pormenorizaremos la normativa jurídica atinente a este recurso.

### III.

### A.

La doctrina del agotamiento de los remedios administrativos es una norma de autolimitación judicial de carácter consuetudinario y práctico cuyo propósito es determinar la etapa apropiada en la que

un tribunal debe intervenir en una controversia previamente presentada ante un foro administrativo. **SLG Flores-Jiménez v. Colberg**, 173 DPR 843, 851 (2008); **Asoc. Pesc. Pta. Figueras v. Pto. del Rey**, 155 DPR 906, 917 (2001); **Mun. de Caguas v. AT&T**, 154 DPR 401, 407 (2001); **Guadalupe Saldaña v. Pres. UPR**, 133 DPR 42, 49 (1993). Esta doctrina persigue que los tribunales ejerzan su discreción de abstenerse de revisar la actuación de una entidad gubernamental hasta que la persona afectada agote todos los remedios administrativos y se refleje la posición final de la agencia. **Rivera v. ELA**, 121 DPR 582, 593 (1988). A su vez, la doctrina del agotamiento de los remedios administrativos procura evitar soslayar el procedimiento administrativo a fin de acelerar la revisión judicial. **Mun. de Caguas v. AT&T**, *supra*; **Quiñones v. ACAA**, 102 DPR 746, 749 (1974). Con ello, se evita "una intervención judicial innecesaria y a destiempo que interfiera con el cauce y desenlace normal del proceso administrativo". **Guadalupe Saldaña v. Pres. UPR**, *supra*. Véase **Moreno Ferrer v. JRCM**, 209 DPR 430, 435 (2022). Así las cosas, la aludida doctrina es aplicable cuando existe alguna fase del procedimiento administrativo que la parte afectada deba agotar. **Mun. de Caguas v. AT&T**, *supra,* pág. 409.

El agotamiento de todos los remedios provistos por la agencia constituye un requisito jurisdiccional. **Asoc. Pesc. Pta. Figueras v. Pto. del Rey**, *supra*. En tal sentido, la Sección 4.2 de la LPAUG, *supra*, sec. 9672, particulariza el agotamiento de los remedios administrativos como un requisito para la revisión judicial. Véase **Mun. de Caguas v. AT&T**, *supra,* págs. 407-408. A saber, la referida sección establece lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o

resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. Sección 4.2 de la LPAUG, *supra,* sec. 9672.

Pues, "[e]l balance de poderes que debe existir entre agencias y tribunales, y la necesidad y conveniencia de tener un récord administrativo completo, aconsejan que se culminen los procesos administrativos antes del examen judicial". ***Vélez Ramírez v. Romero Barceló***, 112 DPR 716, 723 (1982). De esta manera, se permite que el foro administrativo desarrolle un historial completo del asunto ante su consideración, utilice el conocimiento especializado de sus funcionarios para adoptar la política pública de la agencia y rectifique oportunamente sus errores o reconsidere el alcance de sus pronunciamientos. ***Moreno Ferrer v. JRCM***, *supra*, págs. 435-436; ***Guadalupe Saldaña v. Pres. UPR***, *supra.* Además, esta doctrina facilita la revisión judicial, dado que el tribunal puede obtener una información más precisa sobre los fundamentos de la actuación del foro administrativo. *Íd.*

Ahora bien, a modo de excepción, existen algunas circunstancias en las que se puede preterir el agotamiento de los remedios administrativos. ***Asoc. Pesc. Pta. Figueras v. Pto. del Rey***, *supra*; ***Guadalupe Saldaña v. Pres. UPR***, *supra*; ***Vda. De Iturregui v. ELA***, 99 DPR 488, 491 (1970). A esos efectos, la Sección 4.3 de la LPAUG, *supra*, sec. 9673 dispone lo siguiente:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

En torno a la excepción por el remedio administrativo ser inadecuado y la dilación en los procedimientos, resulta impráctico que la persona afectada esté obligada a agotar los remedios administrativos ante la inacción de la agencia en hacer cumplir sus requerimientos. ***Moreno Ferrer v. JRCM***, *supra*, pág. 437; ***Asoc. Pesc. Pta. Figueras v. Pto. del Rey***, *supra*. No obstante, la mera lentitud de la agencia no justifica prescindir el cauce administrativo por sí solo, puesto que se requiere que el trámite administrativo sea una gestión inútil o que acarree un daño irreparable. ***Moreno Ferrer v. JRCM***, *supra*, pág. 437; ***Guadalupe Saldaña v. Pres. UPR***, *supra*, pág. 50.

Por otro lado, la mera invocación de una cuestión constitucional no es un eslabón que produce la preterición automática del procedimiento administrativo. ***Guadalupe Saldaña v. Pres. UPR***, *supra*, pág. 51; ***Procuradora Paciente v. MCS***, 163 DPR 21, 37 (2004); ***First Fed. Savs. v. Asoc. De Condómines***, 114 DPR 426 (1983), 438-439. Esto, puesto que es necesario que se demuestre la existencia de un agravio de patente intensidad que justifique desviar el cauce administrativo. *Íd.*

Empero, quien recurra a un foro judicial, debe alegar la necesidad de preterir el procedimiento administrativo, mediante hechos específicos y bien definidos, de modo que el tribunal pueda evaluar la defensa del Estado. ***Guadalupe Saldaña v. Pres. UPR***, *supra*, pág. 50; ***Moreno Ferrer v. JRCM***, *supra*; ***Rivera v. ELA***, *supra*, pág. 596.

**B.**

La Ley de Armas tiene el propósito de armonizar el derecho constitucional de una persona a poseer y portar armas conjunto con el derecho del Estado de regular dicha actividad. Exposición de motivos de la Ley Núm. 168-2019, *supra*. En tal sentido, el Artículo 4.01 de la Ley de Armas, *supra*, sec. 464, establece que "[n]inguna

persona, natural o jurídica, podrá dedicarse al negocio de armero, sin poseer una licencia de armero expedida por [...] la Oficina de Licencias de Armas". Dicha licencia de armero deberá renovarse anualmente y está sujeta a la aprobación y certificación de la Oficina de Licencia de Armas sobre las medidas de seguridad para el almacenamiento y la custodia de las armas de fuegos y municiones en la edificación donde ubique el establecimiento. *Íd.* Así las cosas, cada seis (6) meses, el Negociado de la Policía examinará los establecimientos de armería con los siguientes objetivos: *Íd.*, sec. 464c.

> (a) realizar un inventario de las armas y municiones y comparar el mismo con el Registro Electrónico;
> (b) inspeccionar los libros, documentos y facturas; y
> (c) verificar el cumplimiento con las medidas de seguridad establecidas en este Capítulo y con las demás disposiciones de esta Ley. *Íd.*

De incumplir con las medidas de seguridad, la persona con licencia de armero tiene un término de treinta (30) días para cumplir con las medidas establecidas en la Ley. *Íd.* De lo contrario, en lo que corrige las deficiencias, deberá depositar las armas y municiones que posea para la venta, almacenamiento y custodia en la bóveda de otro armero o en el Depósito de Armas y Municiones del Negociado de la Policía, dentro del término que determine el Comisionado. *Íd.*

Por su parte, el Artículo 4.03 del Reglamento de la Ley de Armas, *supra*, dispone que dicha licencia de armero requerida para operar una armería puede revocarse cuando, entre otras circunstancias, se inobserve las medidas de seguridad en dos (2) o más ocasiones. En tal circunstancia, el Artículo 4.01 (f) de la Ley de Armas, *supra*, sec. 464, dispone que el Comisionado, previa notificación escrita, podrá cancelar la licencia y, de la persona afectada estar inconforme, podrá llevar una acción de revisión, a tenor con lo establecido en la Ley de Armas. Véase también Artículo 4.04 del Reglamento de la Ley de Armas, *supra*. Sobre el particular,

el Artículo 7.06 de la Ley de Armas, *supra,* sec. 467e, dispone que toda determinación por virtud de dicho estatuto se regirá por las determinaciones de vistas informales, adjudicaciones y reconsideraciones establecidas por la LPAUG, *supra.*

**C.**

La Sección 1.4 de la LPAUG, *supra*, sec. 9604, dispone que es aplicable a todos los procedimientos administrativos conducidos ante las agencias que no están expresamente exceptuados. En tal sentido, en lo que respecta a la reconsideración de una determinación administrativa, la Sección 3.15 de la LPAUG, *supra*, sec. 9655 dispone lo siguiente:

> **La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden.** La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tornar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo ordinario o del envío por medio electrónico de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo ordinario o del envío por medio electrónico, según corresponda. (Énfasis nuestro).

De la parte adversamente afectada por la determinación final de la agencia, que haya agotado todos los remedios administrativos disponibles, podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta (30) días desde

la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o lo dispuesto por la Sección. 3.15 de la LPAUG. Véase Sección 4.2 de la LPAUG, *supra*, sec. 9672.

Analizada la controversia de marras dentro del marco doctrinal previamente esbozado, nos hallamos en posición de resolver.

**IV.**

En el presente caso, SAS nos señaló que el Negociado de Investigaciones cometió tres (3) errores, que discutiremos en conjunto. En síntesis, arguyó la agencia incidió en no conceder la vista administrativa solicitada y en no reconsiderar su acción, amparándose en una notificación insuficiente en derecho.

Tras un análisis objetivo, sereno y cuidadoso del recurso en cuestión, del escrito en oposición del Negociado de la Policía, así como de los documentos que conforman su apéndice, concluimos que el Negociado de la Policía cometió los errores señalados. De conformidad con el cauce administrativo dispuesto en la Ley de Armas, *supra*, sec. 464 y sec. 467e y el Reglamento de Armas, *supra*, la persona adversamente afectada por la determinación del Negociado de la Policía podrá solicitar reconsideración, a tenor con los términos dispuestos en la LPAUG. Reiteramos que la Sección 3.15 de la LPAUG, *supra*, sec. 9655 dispone que la parte adversamente afectada por la resolución u orden final de una agencia podrá solicitar reconsideración, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden en cuestión. Posterior a agotar los procedimientos administrativos, la persona adversamente afectada podrá solicitar revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta (30) días desde la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia. Véase Sección 4.2 de la LPAUG, *supra*, sec. 9672.

En el caso ante nos, la notificación SAIC-NILIAF-1-0716 del 7 de septiembre de 2022 es insuficiente en derecho puesto que apercibe a SAS sobre un procedimiento administrativo y judicial contrario al dispuesto en LPAUG, *supra*. La notificación SAIC-NILIAF-DILAIAP-4-0001 del 24 de enero de 2024 también resultó inoficiosa, pues no advirtió a SAS de su derecho a solicitar una vista administrativa. Adviértase que, de conformidad con lo establecido en la LPAUG, *supra*, SAS tenía derecho a la celebración de una vista administrativa de naturaleza evidenciaria. A través del proceso, SAS solicitó la celebración de una vista en varias ocasiones, pero la agencia recurrida no celebró vista alguna. La agencia recurrida erró al no ordenar la celebración de una vita administrativa con el fin de poder adjudicar la reconsideración presentada por SAS, ello de forma informada, y con las debidas determinaciones de hecho y conclusiones de derecho.

El Negociado de la Policía es el organismo administrativo llamado por nuestro ordenamiento jurídico para expedir, investigar y revocar las licencias de armeros, la ocupación de las armas y las municiones, así como para regular la actividad del establecimiento de armería, mediante la Ley de Armas, *supra*, y su Reglamento, *supra*. Por ello, resulta forzoso concluir que el Negociado de la Policía estaba obligado a acoger la solicitud de reconsideración de SAS como una solicitud de vista administrativa, con el fin de determinar, de forma final, si procedía la revocación de la licencia de armero. Resaltamos que la notificación SAIC-NILIAF-DILAIAP-4-0001 carece de determinaciones de hechos que le permitan a esta Curia apelativa evaluar la determinación de la agencia. A la luz de lo anterior, atisbamos prudente que este caso continúe su cauce administrativo para que el Negociado de la Policía culmine los procedimientos y desarrolle un historial completo del asunto ante su consideración, previo al examen judicial.

Por otro lado, con respecto a la *Certificación de recibo de armas y/o municiones,* para solicitar una vista administrativa sobre la ocupación de las armas y municiones, notamos que tanto SAS como el Negociado de la Policía aducen fechas distintas sobre el recibo de dichos documentos por parte de SAS. Pues, la armería arguyó que recibió las certificaciones el 14 de septiembre de 2022, mientras la agencia adujo que lo entregó el 7 de septiembre de 2022. Además, de un examen sosegado de dichas certificaciones, observamos que contienen la fecha en que se ocuparon las armas, más no la fecha de notificación, de la cual se determina el término para solicitar una vista administrativa. Es menester subrayar que en el *Inventario de propiedad ocupada* surge que las armas se ocuparon el 7 de septiembre de 2024, pero que la señora Cardona Valentín recibió dicho documento el 14 de septiembre de 2022. El referido documento establece que el motivo de la ocupación fue la revocación de la licencia de armero, fundamentada en una notificación nula. Igualmente, en todas las *Certificaciones de recibo de armas y/o municiones* se refleja que la ocupación de la propiedad efectuada el 7 de septiembre de 2022, estuvo motivada ante una notificación contraria a derecho.[14] Adviértase que en dicho documento se consignó palmariamente que el motivo para ocupar las armas fue que **se revocó la licencia de armero**, por lo que resulta un contrasentido basar lo consignado en dicho documento en una notificación de revocación de la licencia, que es nula en derecho. Tampoco hemos encontrado autoridad que sustente el término de 15 días que el Negociado informa en el formulario pertinente que la parte tiene para impugnar las referidas ocupaciones.

Por tal motivo, distinto a lo planteado por el Negociado de la Policía, procede que se revise la ocupación de todas las armas y

---

[14] Véase *Íd.,* Anejo 2, págs. 6-145.

municiones de SAS y que se celebre una vista administrativa. Es decir, sobre la propiedad ocupada tanto el 7 de septiembre de 2022, así como el 15 de septiembre de 2022. Para los fines de la revisión de la licencia procede tomarse como referencia la fecha de la última notificación. Reiteramos que de las propias alegaciones de las partes y de los documentos que obran en el expediente ante nos, existe ausencia de una fecha cierta de la notificación a SAS de cada *Certificación de recibo de armas y/o municiones* y la ocupación se fundamentó en un formulario informando la revocación de la licencia de armero que es contrario a derecho.

Por todo lo anterior, procede revocar la notificación SAIC-NILIAF-DILAIAP-4-0001 emitida el 24 de enero de 2024 y devolver el caso al Negociado de la Policía para que se le otorgue a SAS una vista administrativa atinente a la revocación de la licencia de armero y la ocupación de todas las armas y municiones efectuadas el 7 de septiembre de 2022 y el 15 de septiembre de 2022, respectivamente.

**V.**

Por los fundamentos que anteceden, se revoca la notificación SAIC-NILIAF-DILAIAP-4-0001 emitida el 24 de enero de 2024.

Se devuelve el caso al Negociado de la Policía para que se celebre una vista administrativa sobre la revocación de licencia de armero y la ocupación de todas las armas y municiones, conforme al debido proceso de ley.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones